IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

## CASE NO.: _____

BAHRI CHIRAG and DANGWAL SANDEEP,
      Plaintiffs,

vs.

MT MARIDA MARGUERITE SCHIFFFAHRTS;
MARIDA TANKERS INC.; HEIDMAR, INC.;
XYZ SHIP OWNER; and, XYZ SHIP EMPLOYER,
      Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, BAHRI CHIRAG and DANGWAL SANDEEP, by and through undersigned counsel, hereby sue Defendants and allege as follows:

## JURISDICTION, PARTIES, AND VENUE

1. This matter is being brought as an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Plaintiffs, BAHRI CHIRAG and DANGWAL SANDEEP ("Plaintiffs"), are seamen within the meaning of 28 U.S.C. § 1916 and are entitled to file suit without prepayment of costs.

3. Defendant, MT MARIDA MARGUERITE SCHIFFFAHRTS, is the registered owner of the vessel described below, which is owned by Defendant, MARIDA TANKERS INC. Defendant, HEIDMAR, INC., is the general agent and commercial manager of MARIDA TANKERS INC. Defendants, XYZ SHIP OWNER and XYZ SHIP EMPLOYER are unknown entities included in an abundance of caution in the event that, through discovery, the identity of these entities will be learned and their true identities may be substituted for XYZ SHIP OWNER and XYZ SHIP EMPLOYER.

- 1 -

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

4. Defendants, at all times material hereto, personally or through an agent:

    a. Transacted business within this state;

    b. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    c. Engaged in substantial activity within this state;

    d. Operated vessels in the waters of this state;

    e. Derived substantial revenue from goods used or consumed or services rendered in this state;

    f. Derived substantial revenue from interstate or international commerce;

    g. Owned, used or possessed real property situated within this state; or

    h. The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

5. The Defendants are subject to the jurisdiction of the Courts of this State.

6. The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. §30104, and the General Maritime Law of the United States.

7. At all times material hereto, Defendants owned, operated, managed, maintained and/or controlled the Subject Vessel, *Marida Marguerite* ("Subject Vessel"). This vessel was registered in a flag of convenience country.

8. The Subject Vessel and/or other vessels in Defendants' fleet regularly call on ports in Connecticut and the United States.

9. At all times material hereto, the Subject Vessel was in navigable waters.

10. At all times material hereto, Plaintiffs were employed as 2nd Assistant Engineers (2AEs) on the Subject Vessel.

11. At all times material hereto, Plaintiffs' employer(s) was(were) the agent(s) of the ship owner and/or ship operator.

## FACTS COMMON TO ALL COUNTS

12. On or about May 8, 2010, the Subject Vessel was in the Gulf of Aden en route from Kandla, Gujarat to Antwerp, Belgium when Somali pirates hijacked the Subject Vessel.

13. Upon hijacking the Subject Vessel, the Somali pirates held the crewmembers, including, but not limited to, the Plaintiffs as hostages and subjected them to continuous physical and mental abuse and torture.

14. The Plaintiffs remained hostages and the abuse and torture continued for approximately eight (8) months while Defendants and/or their agents negotiated with the Somali pirates.

15. The Plaintiffs were released between December of 2010 and January of 2011.

## COUNT I
## NEGLIGENCE *PER SE*

Plaintiffs reallege, incorporate by reference, and adopt paragraphs one (1) through fifteen (15) as though they were alleged herein.

16. The Maritime Transportation Security Act of 2002 ("MTSA"), 46 U.S.C. § 70101, *et seq.*, was enacted to address maritime transportation security and to deter potential "transportation security incidents," defined as "security incident[s] resulting in a significant loss of life, environmental damage, transportation system disruption, or economic disruption in a particular area." 46 U.S.C. § 70101(6).

17. The MTSA requires the owners and operators of "vessels and facilities that the Secretary believes may be involved in a transportation security incident" to prepare a security plan "for deterring a transportation incident to the maximum extent practicable." *Id.* at § 70103(c)(1)-(2).

18. These security plans must be "consistent with the requirements of the National Maritime Transportation Security Plan and Area Maritime Transportation Security Plans" and must include provisions for establishing and maintaining physical security, passenger and cargo security, and personnel security." *Id.* at § 70103(c)(3).

19. Pursuant to the MTSA's implementing regulations, the United States Coast Guard requires that each vessel owner draft a Vessel Security Plan ("VSP"), defined as a "plan developed to ensure the application of security measures designed to protect the vessel and the facility that the vessel is servicing or interacting with." 33 C.F.R. § 101.105.

20. At all times material hereto, Defendants failed to enact and/or implement a security plan in accordance with the MTSA and the United States Coast Guard due to one or more of the following:

  a.  Failure to submit a security plan for approval by the United States Coast Guard;

  b.  Failure of the security plan to be approved by the United States Coast Guard;

  c.  Failure to include and/or implement procedures for training, drills and/or exercises;

  d.  Failure to include and/or implement procedures for the safety and/or protection of its crewmembers;

  e.  Failure to include and/or implement procedures for the prevention of unauthorized access to the ship;

  f.  Failure to include and/or implement procedures to be followed in the event that security is compromised due to an incident, including, but not limited to, an incident involving intruders, pirates and/or hostages;

g. Failure to include and/or implement communication procedures to be followed before, during and/or after an incident, including, but not limited to, an incident involving intruders, pirates and/or hostages;

h. Failure to include and/or implement procedures for reporting security incidents, including, but not limited to, incidents involving intruders, pirates and/or hostages;

i. Failure to include and/or implement procedures for the inspection, testing, calibration, and/or maintenance of any security equipment provided onboard, if any; and/or

j. Failure to include and/or implement procedures for the periodic review and/or updating of the plan.

21. As seamen aboard the Subject Vessel, Plaintiffs were at all times material hereto members of the class of intended beneficiaries of the aforementioned regulations and suffered injuries of the type against which the regulations are designed to protect.

22. As a result of the unexcused violation of Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and earning capacities have been impaired.  The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come

with Plaintiffs' jobs, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline tickets home and back.

**WHEREFORE**, Plaintiffs demand all damages entitled by law and demand jury trial of all issues so triable.

## COUNT II
## JONES ACT NEGLIGENCE

Plaintiffs reallege, incorporate by reference, and adopt paragraphs one (1) through fifteen (15) as though they were alleged herein.

23. At all times material hereto, it was the duty of Defendants to provide Plaintiffs with a reasonably safe place to work.

24. Plaintiffs' injuries are due to the fault and negligence of Defendants, and/or their agents, employees and/or servants, as follows:

    a.  Failure to properly navigate the ship;

    b.  Failure to remain in port or divert to an area of safety;

    c.  Failure to properly instruct the Captain on what actions to take;

    d.  Intentionally encountering known risks by navigating through pirate-infested waters;

    e.  Failure to change the itinerary and course of the ship based on the pirate-infested waters;

    f.  Failure to change the course of the vessel until it was too late to avoid the seizure/hijacking by the pirates;

    g.  Placing the lives and safety of the crewmembers generally and Plaintiffs specifically at risk by navigating through the pirate-infested waters in order to save time and/or money;

    h.  Failure to timely contact the United States Coast Guard with a distress call, and to receive advice concerning the navigation of the vessel;

i.   Failure to enact and/or implement a security plan in accordance with the MTSA and the United States Coast Guard;

j.   Failure to hire persons, employees and/or agents reasonably suited for providing, implementing and/or maintaining proper security measures adequate to ensure the safety of its crewmembers, including the Plaintiffs, on the Subject Vessel;

k.   Failure to properly train, instruct and/or supervise crewmembers to provide, implement and/or maintain proper security measures adequate to ensure the safety of other crewmembers, including the Plaintiffs;

l.   Failure to provide a reasonable number of qualified security officers, supervisors, and/or guards on the Subject Vessel and/or to otherwise provide adequate security on the Subject Vessel;

m.   Failure to conduct negotiations with the pirates in an adequate and/or timely manner;

n.   Failure to use reasonable care to provide Plaintiffs a reasonably safe place to work;

o.   Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the Plaintiffs while engaged in the course of their employment on the Subject Vessel;

p.   Failure to ascertain the cause of prior similar incidents so as to take measures to prevent their re-occurrence and, more particularly, Plaintiffs' incident; and/or

q.   Prior to Plaintiffs' incident, Defendants failed to investigate the hazards to Plaintiffs and then take the necessary steps to eliminate those hazards, minimize them or warn the Plaintiffs of the danger from the hazard.

All of the above caused the Plaintiffs to be injured.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

25. Defendants knew of the foregoing conditions causing Plaintiffs' incident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

26. As a result of the negligence of Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and earning capacities have been impaired.  The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come with Plaintiffs' jobs, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline tickets home and back.

**WHEREFORE**, Plaintiffs demand all damages entitled by law and demand jury trial of all issues so triable.

## COUNT III
## UNSEAWORTHINESS

Plaintiffs reallege, incorporate by reference, and adopt paragraphs one (1) through fifteen (15) as though they were alleged herein.

27. On or about the aforementioned date, Plaintiffs were employed by Defendants as seamen and were members of the Subject Vessel's crew, which was in navigable waters.

28. At all times material hereto, the Subject Vessel was owned, managed, operated and/or controlled by Defendants.

29. At all times material hereto, Defendants had the absolute non-delegable duty to provide Plaintiffs with a seaworthy vessel.

30. On or about the previously stated date, the unseaworthiness of Defendants' vessel was a legal cause of injury and damage to Plaintiffs by reason of one or more of the following:

a.   The vessel was unsafe and unfit due to the conditions created by Defendants' conduct stated in paragraph 24;

b.   The vessel was not reasonably fit to navigate through pirate-infested waters;

c.   The vessel's crew was not properly trained, instructed and/or supervised to provide, implement and/or maintain proper security measures adequate to ensure the safety of its crewmembers, including the Plaintiffs;

d.   The vessel's crew was not reasonably suited for providing, implementing and/or maintaining proper security measures adequate to ensure the safety of its crewmembers, including the Plaintiffs;

e.   The vessel did not have a reasonable number of qualified security officers, supervisors, and/or guards;

f.    The vessel did not have adequate security, including, but not limited to, weapons and/or non-lethal methods of resisting intruders generally and pirates specifically;

g.   The vessel did not have a ship security alert system; and/or

h.   The vessel and/or its crewmembers did not have an adequate security plan in accordance with the MTSA and the United States Coast Guard;

All of the above caused the Plaintiffs to be injured.

31. As a result of the negligence of Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and earning capacities have been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come with Plaintiffs' jobs, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline tickets home and back.

**WHEREFORE**, Plaintiffs demand all damages entitled by law and demand jury trial of all issues so triable.

## COUNT IV
## FAILURE TO PROVIDE MAINTENANCE AND CURE

Plaintiffs reallege, incorporate by reference, and adopt paragraphs one (1) through fifteen (15) as though they were originally alleged herein.

32. On or about the aforementioned date, Plaintiffs were injured while in the service of the Subject Vessel as a crewmembers.

33. Under the General Maritime Law and by operation of treaty, Plaintiffs, as seamen, are entitled to recover maintenance and cure from Defendants, until they are declared to have reached maximum possible cure. Maintenance and cure includes unearned wages (regular

- 10 -

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

wages, overtime, vacation pay and tips), which are reasonably anticipated to the end of the contract or voyage, whichever is longer.

34. Maintenance and cure is an ongoing obligation of the Defendants from the date of the Plaintiffs' injury up through trial and at times beyond as Plaintiffs are allowed to bring serial lawsuits for maintenance and cure purposes. Although maintenance and cure can be properly terminated at the point when the crewmember reaches Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC) it must be reinstated if the Plaintiffs suffer a relapse of their condition that once again requires treatment to return the Plaintiffs to an MMI/MMC status or if a cure becomes available that was not available to the Plaintiffs at the time of the declaration of MMI/MMC. In addition, if an MMI/MMC declaration is challenged by another physician, the conflict must be resolved in favor of the crewmember receiving the additional care (treatment)/cure that is recommended.

35. Defendants willfully and callously delayed, failed and refused to pay Plaintiffs' entire maintenance and cure so that Plaintiffs have become obligated to pay the undersigned a reasonable attorney's fee. In addition, Defendants were late in paying the maintenance and cure when they did pay it.

36. As a result of the negligence of Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and earning

capacities have been impaired.  The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come with Plaintiffs' jobs, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline tickets home and back.

**WHEREFORE**, Plaintiffs demand all damages entitled by law, attorneys' fees and demand jury trial of all issues so triable.

## COUNT V
## FAILURE TO TREAT

Plaintiffs reallege, incorporate by reference, and adopt paragraphs one (1) through fifteen (15) as though they were originally alleged herein.

37. On or about the aforementioned date, Plaintiffs were employed by Defendants as seamen and were members of the Subject Vessel's crew, which was in navigable waters.

38. It was the duty of Defendants to provide Plaintiffs with prompt, proper and adequate medical care.

39. Defendants negligently failed to promptly provide Plaintiffs with prompt, proper, adequate, and complete medical care.  This conduct includes, but is not limited to, one of more of the following:

a.   Failure to provide prompt, proper, and adequate medical care to the Plaintiffs which aggravated their injuries, caused additional pain and disability, and/or delayed getting the care they needed; and/or

b.   Failure to select and utilize competent, skilled and properly trained medical care providers equipped with proper and adequate medical equipment with respect to the Plaintiffs' medical care; and/or

c. Failure to properly medically manage Plaintiffs' medical care after Plaintiffs were injured.

40. As a result of the negligence of Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and earning capacities have been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come with Plaintiffs' jobs, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline tickets home and back.

41. This Count is alleged separately from Jones Act Negligence pursuant to *Joyce v. Atlantic Richfield Company*, 651 F.2d 676 (10th Cir. 1981) which states, in part: "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

**WHEREFORE**, Plaintiffs demand all damages entitled by law and demands jury trial of all issues so triable.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs reallege, incorporate by reference, and adopt paragraphs one (1) through fifteen (15) as though they were originally alleged herein.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

42. The aforementioned acts and/or omissions of Defendants directly involved and affected the Plaintiffs by proximately causing Plaintiffs to experience severe and extreme emotional distress and psychological trauma, which manifested itself physically.

43. Specifically, as a result of the negligence of Defendants, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and earning capacities have been impaired.  The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come with Plaintiffs' jobs, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline tickets home and back.

**WHEREFORE**, Plaintiffs demand all damages entitled by law and demands jury trial of all issues so triable.

Dated: June 14, 2012.

By: _____
K. Wynne Bohonnon, Esq.
Bohonnon Law Firm, LLC
195 Church Street
New Haven, CT 06510
(203) 787-2151
Fed. Bar No. 05808

*AND*

LIPCON, MARGULIES,

ALSINA & WINKLEMAN P.A.
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: _____
**MICHAEL A. WINKLEMAN**
Florida Bar No. 36719

(*pro hac vice* forthcoming)

- 15 -

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .