**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BAHRI CHIRAG, et al,<br>　　　Plaintiffs,<br><br>　　　v.<br><br>MT MARIDA MARGUERITE<br>SCHIFFAHRTS, et al.,<br>　　　Defendants. | No. 3:12cv879 (SRU) |

**RULING ON MOTION TO DISMISS**

This case arises out of Somali pirates' seizure of a Marshall Island ship—which was managed by a British company and staffed by Indian sailors— in the Gulf of Aden.  In the fall of 2010, pirates boarded a tanker named the MT Marida Marguerite Schiffarhrts ("Marida Marguerite") somewhere off the coast of Yemen. The ship had set out from India for Belgium, but remained captured at sea for eight months while the pirates sought ransom and tortured the sailors.   Two of the kidnapped sailors, both of whom are from India, are the plaintiffs in this case, and they have sued under a variety of tort and regulatory compliance theories, all of which "arise under the Jones Act, and the General Maritime Law of the United States." *See Amended Complaint* at ¶ 6.

None of the defendants in this case is an American person or company. Marida Marguerite is a Marshall Island ship. At the time of the incident, the ship was part of a pool of tankers chartered to another Marshall Island company, Marida Tankers.  In turn, Marida Tankers was part of a shipping pool managed by an English company, Heidmar UK. Plaintiffs nevertheless assert that all three companies, Marida Marguerite, Marida Tankers, and Heidmar UK, "transacted business within [Connecticut]," "operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or

county," "engaged in substantial activity within this state," "operated vessels in the waters of this state," or "owned, used or possessed real property situated within this state." *See Amended Complaint at* ¶4. Marida Marguerite has moved for dismissal, arguing that it never had contact with Connecticut, and this court lacks personal jurisdiction over it.

I. STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). In a posture such as this, where there has been no evidentiary hearing or jurisdictional discovery, that burden is light. As stated in *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001):

> A plaintiff may carry this burden by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction. A plaintiff can make this showing through his own affidavits and supporting materials[,] containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant.

In resolving the personal jurisdiction issue, a court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

II. DISCUSSION

To establish a prima facie case of personal jurisdiction, a plaintiff must satisfy a two-part inquiry. First, it must allege facts sufficient to show that Connecticut's long-arm statute reaches a defendant, and second, it must establish that the court's exercise of jurisdiction will not violate due process. *Knipple v. Viking Communications*, 236 Conn. 602, 605-06 (1996).  At the prima facie stage, a plaintiff need not point to any evidence that supports jurisdiction. Instead, it "need only assert facts constituting … jurisdiction" all of which should be judged "in the light most favorable to the plaintiff." *Amerbelle Corp. v. Hommell*, 272 F. Supp. 2d 189, 192 (D. Conn.

2003). In addition, "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, *see* Fed. R. Civ. P. 11, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established *solely by allegations*." *Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990).

Plaintiffs' complaint contains one set of conclusory assertions – plaintiffs allege that defendant engaged in each type of commercial business listed in Connecticut's long-arm statute. Their briefing opposing dismissal contains two additional specific facts to support their theory of jurisdiction. First, plaintiffs point to a contract between Marida Marguerite and Heidmar UK signed by a Heidmar UK executive who lives in Connecticut.  Second, they point to a web page for a Heidmar UK office in Connecticut, though it is not clear how Heidmar and Heidmar UK relate other than in name. The narrow issue here is thus whether a contract between the Marida Marguerite and a British company with a connection to a Connecticut-based affiliate office is enough to establish personal jurisdiction over the Marida Marguerite. For the reasons set forth below, I conclude that it is not.

*A. Long-Arm Statute*

In determining whether a cause of action arose from the defendant's transaction of business within Connecticut, the court does not apply a rigid formula but rather balances "considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 161 (D. Conn. 2009). Among the relevant factors are (1) "whether the defendant entered into an ongoing contractual relationship with a Connecticut-based plaintiff;" (2) "whether the contract was negotiated in Connecticut;" (3) "whether, after executing a contract with the defendant, the defendant visited Connecticut to meet with the plaintiff or communicated with the plaintiff as

part of the contractual relationship;" (4) and "whether the contract contains a Connecticut choice-of-law provision." *Id*. Indeed, a "single purposeful business transaction" can give rise to jurisdiction. *Id*. "A purposeful business transaction is one in which the defendant has engaged in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Id*.

The contract between Heidmar and Marida Marguerite was signed in London. *See Plaintiffs' Opposition to Dismissal*, doc. #46 Ex. 3. Nothing suggests that a Heidmar representative based in Connecticut sent emails or placed phone calls regarding the contract's terms. Nothing implies that any defendant conducted a meeting in Connecticut. Nothing in the contract refers to Connecticut law; indeed, both agreements contain choice-of-law provisions selecting foreign countries' law as governing. And nothing indicates that Marida Marguerite signed these agreements to gain some kind of foothold in the Connecticut shipping business. In short, other than a website proving that Heidmar UK's representative, John Edmundson, lives in Connecticut, the plaintiffs have not offered a factual assertion, either alleged or proven with exhibits, that connects the shipping pool agreement between these two companies to Connecticut. In short, no specific allegation or supplemental record evidence ties Marida Marguerite's contract with Heidmar to Connecticut.

During oral argument, plaintiffs' counsel asserted that Heidmar UK was Marida Marguerite's agent, and, thus, Heidmar UK's allegedly tortious actions can be attributed to Marida Marguerite. Even if plaintiffs established that Marida Marguerite controlled Heidmar UK, they have not alleged, nor do their supplemental documents suggest, that Marida Marguerite's control extended beyond Heidmar UK to encompass the American side of Heidmar's business. In other words, plaintiffs have not alleged or established the hallmarks of an

4

agency relationship –that Marida Marguerite asked Heidmar's American operation to act the ship company's behalf and subject to their control, and that Heidmar consented. *See* REST 3D AGEN § 1.01. Plaintiffs have only provided a basis to infer that Marida Marguerite enlisted Heidmar UK to act as its agent for the limited purpose of managing Marida's shipping pool, and that Heidmar UK consented to accomplish that task. *See* Plaintiff's Opposition to Motion to Dismiss, doc. # 46, Ex. 4 (contract naming Heidmar UK as Marida Marguerite's agent).

Finally, even if Heidmar UK and Marida Marguerite formed a contract in the United States, or, even if Heidmar's American arm acted as Marida Marguerite's agent, the alleged cause of action did not arise out of either of these relationships.   Plaintiffs allege that defendants' failure to comply with American regulatory regimes resulted in unsafe conditions on the Marida Marguerite. The complaint does not however specify how some contractual breakdown between Marida Marguerite and Heidmar, or some problem between a principal and an agent, resulted in Somali pirates overtaking a ship off the coast of Yemen. Put more simply, this is not a breach of contract action between Marida Marguerite and Heidmar, in which a court will have to interpret the nature of their agreement, nor is this a case against a wayward agent, in which a court would have to dissect the scope of Heidmar's delegated authority.  This is a case about whether foreign companies took enough precautions to protect their foreign employees in foreign waters, and plaintiffs have not implicated any American interest.

    *B. Minimum Contacts*

    The minimum contacts required by due process mirror the threshold set by the long-arm statute. The evaluation centers on the question whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A commercial actor need

not have a physical presence in a state to establish the necessary minimum contacts, so long as the actor's efforts are directed at the forum state so that a defendant could foresee being "haled into court" there. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Plaintiffs allege that the court has specific jurisdiction in this case,[1] which requires that "the litigation results from alleged injuries that arise out of or are related to those activities." *Screen Tech, Inc. v. Carolina Precision Plastics*, *LLC*, 2006 WL 197360 at *3 (D. Conn. 2006).

As described above, plaintiffs do not base any of their claims on the defendants' contractual or agency relationship with each other. They do not trace their injuries to one of the parties failing to deliver on a promise.  All of the claims arise out of omissions or reckless conduct that occurred somewhere else, either in a foreign country where this trip was planned, or in an unnamed location where the companies developed their security procedures for ships sailing through dangerous waters. And all of the harm exacted upon the sailors occurred in the Gulf of Aden, and resulted from a Somali pirate attack, not a failure to meet a contractual obligation. In short, the complaint does not touch upon any controversy regarding the contracts or relationships that it claims defendants formed in Connecticut. For that reason, this court does not have specific jurisdiction over the Marida Marguerite.

III. CONCLUSION:

For the reasons set forth, Marida Marguerite's Motion to Dismiss for Lack of Personal Jurisdiction [doc. #17] is therefore GRANTED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 26th day of March 2013.

---

[1] At oral argument, plaintiffs' counsel waived any argument based on general jurisdiction: "MR. WINKELMAN: [T]o be clear, I'm only making an argument regarding specific jurisdiction . . . there is no argument of general jurisdiction." *Transcript of Oral Argument*, doc. #62 at 29:7-11.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge