UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BAHRI CHIRAG, et al.,<br>    Plaintiffs,<br><br>        v.<br><br>MT MARIDA MARGUERITE<br>SCHIFFAHRTS, et al.,<br>    Defendants. | No. 3:12cv00879 (SRU) |

### RULING ON DEFENDANT'S MOTION TO DISMISS ON
### *FORUM NON CONVENIENS* GROUNDS

This case arises from an unfortunate international incident, which has no real connection to this country or this court.  In May 2010, Somali pirates hijacked a tanker in the Gulf of Aden, somewhere off the coast of Yemen.  The tanker, the MT Marida Marguerite Schiffahrts ("Marida Marguerite"), was a German owned and operated, Marshall Islands-flagged vessel with a crew that included sailors from India, Bangladesh, and Ukraine.  The pirates, seeking ransom, held the crew hostage at sea for eight months.  During this prolonged period of captivity, the sailors were subjected to severe physical and mental abuse, including torture.

The plaintiffs, Bahri Chirag and Dangwal Sandeep, are two members of Marida Marguerite's crew.  After they were freed and repatriated to India, they filed this suit against their employer, as well as defendants Marida Tankers, Inc. ("MTI") and Heidmar, Inc., under a variety of tort and regulatory compliance theories, all of which "arise under the Jones Act, and the General Maritime Law of the United States."[1]  *See* Am. Compl. ¶ 6 (doc. # 47).  Defendant

---

[1] Despite the statement in paragraph 6 of the Amended Complaint that the complaint arises under the Jones Act and General Maritime Law, Count One alleges negligence per se in violation of the Maritime Transportation Security Act of 2002 ("MTSA"), 46 U.S.C. § 70101 et seq.  The relevant provisions of the MTSA, however, are concerned with the security of U.S. ports and nothing in the text or legislative history of the relevant provisions indicates that they are meant to cover a foreign-owned vessel sailing from a foreign port encountering difficulties in foreign waters.  Pub. L. 107-295, 116 Stat. 2064, codified at 46 U.S.C. § 70101 et seq.  It is a "longstanding principle of

1

MTI is a Marshall Islands company that operates a "vessel pool," which included Marida Marguerite.  Defendant Heidmar is a global company headquartered in Norwalk, Connecticut that manages vessel pools including, the plaintiffs allege, MTI.

Defendant MTI has moved to dismiss on the grounds of *forum non conveniens* (doc. #50), asserting that this lawsuit has no material connection to the United States and that it should be litigated in an alternate forum.  Shortly after this motion was filed, I dismissed Marida Marguerite for lack of personal jurisdiction.  *See* Dismissal Order (doc. # 65).  For the reasons set forth below, I conclude that the relevant factors clearly favor adjudication of this dispute in Germany, where all necessary defendants will be amenable to process.  Therefore, MTI's motion to dismiss is granted.

## I. DISCUSSION

### A. *Forum Non Conveniens* in Jones Act Cases

Both parties assert that I must determine whether the Jones Act and/or General Maritime Law govern this case before applying the doctrine of *forum non conveniens*.  Def. Am Br. 3 (doc. # 53); Pls.' Am. Br. 4 (doc. # 74).  MTI contends that I must first conduct a choice-of-law analysis and, if that analysis counsels the application of foreign law, I must then apply the doctrine of *forum non conveniens*.  Def. Am. Br. 3 (citing *Akofin v. Jumbo Nav., N.V.*, 481 F. Supp. 2d 310 (S.D.N.Y. 2001)).  Plaintiffs, citing *Antypas v. Cia. Maritima San Basilio, S.A.*, 541 F.2d 307, 310 (2d Cir. 1976), claim that that I lack discretion to dismiss on *forum non conveniens* grounds at all if the Jones Act applies.  Pls.' Am. Br. 4.  *Antypas*, however, did not

---

American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) (quoting *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248 (1991) (internal quotations and citations omitted)).  Applying this presumption against extraterritoriality, it is clear that the MTSA does not cover the conduct at issue in this case.

involve a *forum non conveniens* dismissal and the dictum it contains to that effect was squarely rejected three decades ago. *Cruz v. Maritime Co. of Philippines*, 702 F.2d 47, 48 (2d Cir. 1983).

In *Cruz*, the Second Circuit held that "when the Jones Act is applicable . . . the district court must exercise its power to adjudicate, absent some exceptional circumstances such as . . . the equitable principle of forum non conveniens." 702 F.2d at 48. Additionally, "maritime choice of law principles are not involved in a forum non conveniens analysis," so it is unnecessary to decide whether U.S. or foreign law applies before dismissing in favor of an alternate forum. *Id.* Thus, *Cruz* clearly establishes that I may dismiss due to *forum non conveniens* whether or not the Jones Act applies, and without first deciding if this case warrants the application of U.S. law. *Cruz*, 702 F.2d at 48; *see also Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 153 (2d Cir. 1980) (en banc) ("There is neither reason nor authority for creating an exception to the general forum non conveniens standard established in *Gilbert* simply because the case invokes the admiralty and maritime jurisdiction of the court."); *Karvelis v. Constellation Lines SA*, 608 F. Supp. 966, 971-72 (S.D.N.Y. 1985), *aff'd*, 806 F.2d 49 (2d Cir. 1986) ("It is within the court's discretion to decline jurisdiction despite Jones Act applicability."); *Ioannides v. Marika Mar. Corp.*, 928 F. Supp. 374, 377 (S.D.N.Y. 1996) ("The principles articulated in *Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947), govern defendants' *forum non conveniens* motion notwithstanding that this is a maritime case in which a Jones Act claim is asserted." (citing *Cruz* and *Alcoa*)).

*Cruz* is consistent with *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), which held that "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Id.* at 247; *see also Gazis v. John S. Latsis (USA) Inc.*, 729 F. Supp. 979, 985-86 (S.D.N.Y. 1990); *Damigos v. Flanders Compania*

*Naviera, S.A. Panama*, 716 F. Supp. 104, 108-09 (S.D.N.Y. 1989). It also accords with the Supreme Court's more recent decision in *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), which held that lower courts need not permit discovery or expend valuable resources deciding threshold issues where the *forum non conveniens* analysis counsels dismissal. *Id.* at 432 ("A *forum non conveniens dismissal . . .* is a determination that the merits should be adjudicated elsewhere. . . . A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." (internal citations omitted)). Consequently, despite plaintiffs' declarations to the contrary, I may proceed with the *forum non conveniens* analysis without first determining choice of law or related issues that would be significant if this case were litigated here on the merits.[2]

---

[2] Two such issues are whether defendant Heidmar is a proper party before this court and whether either defendant may be considered a Jones Act employer. First, the defendants assert that, since June 2009 and at all times relevant to this complaint, MTI was managed by non-party WOMAR, a Singaporean company that is party to a Heidmar joint venture. *See* Jain Decl. (doc. # 51). Prior to then, MTI was managed by Heidmar U.K., a branch of Heidmar. *Id.* Defendants contend both that WOMAR is separate and distinct from Heidmar and that neither WOMAR nor Heidmar U.K. has ever been connected to Heidmar's U.S. headquarters. *Id.* Plaintiffs assert that WOMAR and Heidmar U.K. are part of Heidmar and that both have clear connections to Heidmar's Connecticut offices. Pls.' Am. Br. 8.

Second, the defendants assert that the Jones Act does not apply because the plaintiffs' employer is no longer party to this lawsuit. "There is no question that the Jones Act applies only between employees and their employer, and the Supreme Court made explicit in *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783 (1949), that only one person, be it an individual or a corporation, could be sued as the employer." *Mahramas v. Am. Export Isbrandsten Lines, Inc.*, 475 F.2d 165, 170 (2d Cir. 1973). Plaintiffs, however, assert that the "borrowed servant" doctrine might permit application of Jones Act against MTI or Heidmar. *See* Pls.' Supp. Br. (doc. #78). The borrowed servant doctrine allows a plaintiff to sue multiple potential employers under the Jones Act in cases where the identity of the true employer is ambiguous. Only one employer ultimately may be held liable, but the borrowed servant doctrine requires the fact finder to decide which of the defendants that is. Although there is no evidence that anyone other than Marida Marguerite employed the plaintiffs in this case, the plaintiffs argue that additional discovery might demonstrate that MTI or Heidmar actually had control over the employment relationship and/or that their work was intended to directly benefit one of these companies. Pls.' Supp. Br. 4-5.

The logic of *Sinochem* applies with full force in this case, which has tenuous connections to the United States at best, *see* Dismissal Order (doc. # 65), and strong connections to another forum or forums. Permitting discovery to determine whether Heidmar U.S. was sufficiently connected with MTI and whether Heidmar or MTI might be plaintiffs' Jones Act employer would involve an unnecessary expenditure of time and resources. In light of the analysis below, determination of the *forum non conveniens* issue in this case would not be affected by the results of discovery.

B.  The *Forum Non Conveniens* Analysis

"The doctrine of *forum non conveniens* permits a court to dismiss a claim even if the court is a permissible venue with proper jurisdiction." *PT United Can Co. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998). The defendant bears the burden of demonstrating why the plaintiffs' choice of forum should be disturbed. *Karvelis*, 608 F. Supp. at 971-72.

District courts enjoy broad discretion to determine "where litigation will be most convenient" and where it "will serve the ends of justice." *PT United Can*, 138 F.3d at 73. The Second Circuit, however, has "outlined a three-step process to guide the exercise of that discretion." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)). First, I must decide the level of deference to afford the plaintiffs' choice of forum. *Id.* Second, I must determine whether an available and adequate alternative forum exists in which the case may be heard. *Id.*; *Piper*, 454 U.S. at 254 n.2. Third, I must balance the private and public interest factors identified by the Supreme Court in *Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947), which are "implicated in the choice of forum." *Id.*

The private interest factors include: (1) the relative ease of access to sources of proof; (2) access to witnesses, including the cost of attendance and availability of compulsory process; (3) where the evidence is located, including "possibility of view of premises, if view would be appropriate to the action"; (4) enforceability of a potential judgment; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508.

The public interest factors include: (1) the administrative burden on the court of litigating a case whose center of gravity lays elsewhere; (2) the burden on the court of "untangl[ing] problems in conflict of laws" and making determinations about foreign law; (3) the burden on

the jury of deciding an essentially foreign case; and (4) the "local interest in having localized controversies decided at home." *Id.* at 508-09.

### i. Deference to the Plaintiff's Choice of Forum

Ordinarily, there is a strong presumption in favor of the plaintiff's choice of forum. *Gilbert,* 330 U.S. at 508-09; *see also Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 966-68 (2d Cir. 1980). This presumption typically applies with less force when a foreign plaintiff chooses a U.S. forum, because "it 'is much less reasonable' to presume that the choice was made for convenience" and more likely that the plaintiff is engaged in forum shopping. *Iragorri*, 274 F.3d at 71 (quoting *Piper,* 454 U.S. at 256).

Rather than approach the issue categorically, *Iragorri* prescribes a "sliding scale" of deference, instructing courts to consider the totality of the circumstances supporting a plaintiff's choice of forum. *Norex*, 416 F.3d at 154. "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri*, 274 F.3d at 72. Conversely, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping . . . the less deference the plaintiff's choice commands." *Id.*

Factors demonstrating that a forum choice is genuinely motivated by convenience include: "(1) the convenience of the plaintiff's residence in relation to the chosen forum, (2) the availability of witnesses or evidence to the forum district, (3) the defendant's amenability to suit in the forum district, (4) the availability of appropriate legal assistance, and (5) other reasons relating to convenience or expense." *Norex*, 416 F.3d at 155 (citing *Iragorri*, 274 F.3d at 72). Factors pointing toward forum shopping include "(1) attempts to win a tactical advantage

6

resulting from local laws that favor the plaintiff's case, (2) the habitual generosity of juries in the United States or in the forum district, (3) the plaintiff's popularity or the defendant's unpopularity in the region, or (4) the inconvenience and expense to the defendant resulting from litigation in that forum." *Id.*  A district court need not specifically address all of these factors, but should consider those that appear relevant in the case. *See id.*

Applying the *Iragorri* factors, it is abundantly clear that the plaintiffs' choice of forum should receive less deference in this case. First and foremost, the plaintiffs are nationals and residents of India.[3] Second, a critical defendant in this case, Marida Marguerite, is not amenable to process in this forum. *See* Dismissal Order (doc. # 65). Third, as discussed in much greater detail below, the bulk of the witnesses and evidence in this case are likely to be found outside of the United States. The only *Iragorri* factor pointing toward "genuine convenience" is the plaintiffs' ability to obtain appropriate legal assistance in this forum.

Plaintiffs admit that they chose to bring this lawsuit in the United States because they are "destitute" and our courts, unlike those of many other nations, permit contingency-fee arrangements. Pls.' Am. Br. 13. This, however, cuts both ways, because the fact that plaintiffs seek to take advantage of generous U.S. laws and procedure arguably indicates forum shopping. *See, e.g.*, *Banculescu v. Compania Sud Americana De Vapores, SA*, No. 11 CIV. 2681(ALC), 2012 WL 5909696, at * 7 (S.D.N.Y. Nov. 26, 2012) (finding that "an inference that forum shopping motivated" the plaintiff's choice forum was "not far-fetched," because the plaintiff "may have been motivated to choose New York to take advantage of federal laws.").

---

[3] Plaintiffs assert that they should not be treated as foreign plaintiffs because as "Jones Act seamen" they are "wards of the Admiralty Courts." Pls.' Am. Br. 13. The Jones Act cases that have applied *Iragorri*, however, make no such distinction between a regular foreign plaintiff and a "Jones Act seaman," and I decline to do so as well. *Banculescu v. Compania Sud Americana De Vapores, SA*, No. 11 CIV. 2681(ALC), 2012 WL 5909696, at * 4 (S.D.N.Y. Nov. 26, 2012); *Varnelo ex rel. Estate of Varnelo v. Eastwind Transp., Ltd.*, No. 02 CIV. 2084 KMW AJP, 2004 WL 103428, at *1 (S.D.N.Y. Jan. 23, 2004).

Considering that the other factors weigh heavily against the convenience of this forum, the totality of the circumstances analysis demonstrates that the plaintiffs' choice of forum should be afforded little deference in this case.

### ii. *Availability and Adequacy of an Alternate Forum*

MTI identifies several alternate forums with connections to this litigation: the Marshall Islands, where it is headquartered; Singapore, where its agent WOMAR is based; India, where the plaintiffs and most of Marida Marguerite's crew reside; and Germany, where Marida Marguerite is located. Def. Am. Br. 11.[4] It proposes Germany as an available alternate forum, and expressly stipulates to jurisdiction there. Def. Am. Br. 10. Plaintiffs object, arguing that Germany is neither available nor adequate. Pls.' Am. Br. 15-16. That argument fails, however, because the alternate forum requirement is a low bar to clear. *See Piper*, 454 U.S. at 254 (explaining that courts should not be concerned unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all").

An alternate forum ordinarily is available and adequate if the defendants are amenable to process there and it permits litigation of the subject matter of the dispute. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). The necessary defendants are amenable to process in Germany. Marida Marguerite, the defendant with the strongest connections to this litigation, is a German-based limited partnership. MTI expressly stipulates to jurisdiction in Germany. Def. Am. Br. 10. Plaintiffs object that defendant Heidmar will not be amenable to process in Germany, but plaintiffs cannot establish that simply by reciting the company's office locations. Regardless, Heidmar is only connected to this litigation because a Heidmar affiliate was acting as MTI's general agent at the relevant time – either Heidmar U.K. or WOMAR, a

---

[4] There is also the United Kingdom, where Heidmar U.K., MTI's former agent is located and where the contract between Marida Marguerite and Heidmar was signed. Def. Am. Br. 6; Pls.' Supp. Br. Ex. 1.

Singapore-based Heidmar joint venture, depending on whether plaintiffs correctly assume that Heidmar and WOMAR are one and the same.  As a Connecticut-headquartered multinational company, Heidmar appears to be nothing more than a tool to anchor this claim in the U.S. courts. Even if Heidmar refused to stipulate to jurisdiction in Germany and otherwise would not be amenable to process there, this lawsuit could proceed against the necessary defendants.  And the dangers of "piecemeal" litigation that plaintiffs warn against are much more pronounced if this suit proceeds in U.S. court without Marida Marguerite than if it proceeds elsewhere without Heidmar.

Plaintiffs also claim that Germany is an inadequate forum because they cannot pursue their Jones Act claim there and the statute of limitations has run on their claim.  Pls.' Am. Br. 15-16. Neither argument is supported by the law.  First, "a plaintiff's hope to gain the benefits of the Jones Act is not a strong factor weighing against dismissal." *Damigos*, 716 F. Supp. at 108-09. A district court should not consider differences in remedy between forums unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254.  Although plaintiffs seek a remedy under the Jones Act, their underlying allegations sound in negligence.  Numerous district courts within this Circuit have confirmed that German courts are available to adjudicate negligence claims and that they can do so adequately. *See Banculescu*, 2012 WL 5909696, at * 7 (citing *Opert v. Schmid*, 535 F. Supp. 591 (S.D.N.Y. 1982); *NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale*, No. 96 Civ. 9321, 1999 WL 39539 (S.D.N.Y. Jan. 28, 1999) (finding German courts to be an adequate alternative forum); *Jauss v. Lehman Bros., Inc.*, No. 94 Civ. 2921, 1995 WL 4023 (S.D.N.Y. Jan. 5, 1995) (same); *Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 382 (S.D.N.Y. 2006) (same); *Mackley v. Gruner & Jahr. A.G. & Co.*, No. 93 Civ. 6521, 1995 WL 417069, at *1

(S.D.N.Y. July 13, 1995) (although pain and suffering awards are lower, Germany provides adequate forum for negligence claim)).

Second, plaintiffs have neglected to read the relevant provisions of the German Civil Code, or Bürgerliches Gesetzbuch ("BGB").  Plaintiffs cite BGB section 195, which contains a three-year standard statute of limitations, but ignore BGB section 199(1), which clearly states that the limitations period does not commence until the end of the calendar year in which the injury occurred.  Plaintiffs were captured in May 2010 and released between December 2010 and January 2011, so they have at least until the end of 2013 to file this lawsuit in German court.[5]  Thus, it is clear that Germany is an available and adequate alternative forum, because the necessary defendants are amenable to process and German courts can provide a meaningful remedy.  *See Piper*, 454 U.S. at 254-55.

### iii.  Private Interest Factors

The trial of this case is unlikely to be "easy, expeditious and inexpensive" wherever it occurs.  *See Gilbert*, 330 U.S. at 508.  Witnesses and evidence are likely to be located all over the globe.  The incident in which the plaintiffs were injured occurred at sea, off the coast of Yemen.  Plaintiffs' physical injuries were caused by Somali pirates.  The crew consisted of nineteen Indians, two Bangladeshis, and one Ukrainian.  Def. Reply 9 (doc. # 76).  The ship owner and operator, Marida Marguerite, has its base of operations in Germany and negotiations for the plaintiffs' release and repatriation were conducted from that base of operations.  Jain Decl. ¶ 20 (doc. # 51).  Individuals with knowledge of those events and related documentary evidence, therefore, presumably are located in Germany.

---

[5] BGB section 199(2) also provides: "Claims for damages based on injury to life, body, health or liberty, notwithstanding the manner in which they arose and notwithstanding knowledge or a grossly negligent lack of knowledge, are statute-barred thirty years from the date on which the act, breach of duty or other event that caused the damage occurred."  Thus, depending on how they plead their complaint, it appears that plaintiffs might have thirty years to commence this litigation in Germany.

Finally, the charter agreement between MTI and Marida Marguerite, which delineates the degree and scope of the former's control over the latter, is a contract between a Marshall Islands company and a German limited partnership. *See* Pls.' Supp. Br. 5, 8 (doc. # 78). It was signed in London and is governed by English law. *See id.* Ex. 1. Aside from the use of Heidmar's headquarters as a "care of" address, *see* Pls.' Am. Br. Ex. 3, which is unsurprising given that Heidmar is the parent of MTI's former agent, Heidmar U.K., and its current agent, WOMAR, is a Heidmar joint venture, nothing indicates that MTI manages Marida Marguerite out of the United States. The ship is not presently located within U.S. jurisdiction and has not even made a port call in the United States since 2009, well before the incidents alleged in the complaint occurred. *See* Jain Decl. ¶ 18; Pls.' Am. Br. Ex. 3.

One thing is clear, however: little, if any, evidence is likely to be found in the United States and few, if any, witnesses will be located here. The fact that a large, multinational commercial tanker operator that has some relationship with MTI is headquartered in Connecticut does not make it likely that documents relevant to this lawsuit will be located here. Plaintiffs' employment contracts were entered into in India, the Charter agreement between Marida Marguerite and MTI was executed in London, and Heidmar's relationship with MTI was first with its U.K. affiliate and then with its Singapore-based joint venture. Similarly, the fact that one or more of the pirates may be imprisoned in Virginia, Pls.' Am. Br. 19-20 and Exs. 7-10, does not transform this into a case where key witnesses are likely to be found in the United States. The plaintiffs themselves deemed it a "ridiculous notion" that they would attempt to call the pirates as witnesses, and even if they intended to do so, the plaintiffs maintain that several of the hijacking pirates are in Ireland. *See* Pls.' Br. 19 (doc. #73).

Instead, the private interest factors point to India, the country of nationality of most of the crew members (including the plaintiffs), the Marshall Islands, where MTI is located, Singapore, where its current agent is located and, most strongly, to Germany, where Marida Marguerite has its offices and employees, and where much of the relevant evidence is likely to be found.

### iv. Public Interest Factors

The public interest factors also point toward dismissal.  This forum has no real interest in the subject matter of the dispute, which is a negligence action brought by Indian plaintiffs against a German defendant, a Marshall Islands defendant, and a U.S. defendant that additional discovery likely would reveal is not a proper party to this action.  *See Gilbert*, 330 U.S. at 508-09.  Moreover, this case will place a heavy administrative burden on this court and present a difficult task for the jury, because the heart of the dispute is essentially foreign.  *See id*.

The United States' general interest in applying its laws is not "a determinative factor to be considered in weighing convenience." *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998).  It certainly does not outweigh the countervailing concerns here, where U.S. law is not even likely to apply.  Although I need not make a choice-of-law determination, a cursory analysis indicates that this litigation's contacts with the United States are not "substantial" enough to justify the application of American law.  *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 440-41 (2d Cir. 1959).[6]  The wrongful acts occurred in the Gulf of Aden.  The plaintiffs are nationals and residents of India.  Marida Marguerite, despite any connections to MTI and/or Heidmar, is a Marshall Islands-flagged ship run by a German

---

[6] The maritime choice-of-law test is set forth in *Lauritzen v. Larsen*, 345 U.S. 571, 581-93 (1953), and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308-09 (1970).  The *Lauritzen* and *Rhoditis* factors are: (1) the place the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. *Lauritzen*, 345 U.S. at 583-91; *Rhoditis*, 398 U.S. at 308-09.

limited partnership with its base of operations in Germany.  The agreement between Marida Marguerite and MTI is governed by U.K. law and nothing indicates that the ship is managed out of the United States or that it has any real relationship with this country.  Thus, it seems both highly unlikely that U.S. law would apply and very likely that this case would involve "untangl[ing] problems in conflict of laws" and making determinations about foreign law.  *Id.* at 508-09.[7]  As a result, it is clear that the *Gilbert* public interest factors, like the private interest factors, counsel dismissal.

## II.  CONCLUSION

For the foregoing reasons, I conclude that litigation in this forum would be inconvenient and that this case should be tried in alternate forum.  Accordingly, Defendants' Motion to Dismiss on *Forum Non Conveniens* Grounds (doc. #50) is GRANTED.

SO ORDERED, this 15th day of November 2013, at Bridgeport, Connecticut.

      /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[7] In their Supplemental Memorandum of Law (doc. # 78), plaintiffs purport to make a motion for leave to amend their complaint to add a cause of action for negligence, pursuant to General Maritime Law.  Pls.' Supp. Br. 10.  Their proposed maritime tort-law claim would be exactly the same as their current Jones Act-negligence claim, but would act as a substitute for that claim in case I ruled that the Jones Act does not apply on these facts.  Permitting plaintiffs to amend their complaint, however, would have no effect on my decision today.  Maritime choice-of-law rules are identical in Jones Act and General Maritime Law cases.  *See De Espana v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461, 467 (2d Cir. 2012); *Koupetoris v. Konkar Intrepid Corp.*, 402 F. Supp. 951, 954 (S.D.N.Y. 1975), *aff'd*, 535 F.2d 1392 (2d Cir. 1976).  Moreover, the *forum non conveniens* analysis is no different in a General Maritime Law case than it is in any other case, including those brought pursuant to the Jones Act.  *See Alcoa*, 654 F.2d at 153; *Cruz*, 702 F.2d at 47-48 (citing *Alcoa*).  Therefore, it is unnecessary to consider plaintiffs' motion for leave amend before dismissing this case on *forum non conveniens* grounds.